**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

**Securities Investor Protection Corp., Applicant,**

**v.**

**ABERDEEN SECURITIES CO., INC., et al.**

**Appeal of SECURITIES INVESTOR PROTECTION CORPORATION, Applicant, and Claude P. Hudson, Trustee for Aberdeen Securities Co., Inc., in Nos. 75–1074, 75–1075 (two cases).**

**Appeal of Claimants Sheldon RAIZES et al., in No. 75–1076.**

**Nos. 75–1074 to 75–1076.**

United States Court of Appeals, Third Circuit.

Argued Sept. 2, 1975.

Decided Nov. 13, 1975.

Theodore H. Focht, Gen. Counsel, Securities Investor Protection Corp., Washington, D. C., Wilfred R. Caron, Associate Gen. Counsel, William H. Seckinger, Senior Atty., Francis L. Carter, Washington, D. C., of counsel, for Securities Investor Protection Corp.

John Biggs, III, Biggs & Battaglia, Wilmington, Del., for Claude P. Hudson, Trustee.

Jerome E. Bogutz, Bogutz & Mazer, Philadelphia, Pa., for claimants Sheldon Raizes and others.

John H. McDonald, Asst. U. S. Atty., Wilmington, Del., for United States.

## OPINION OF THE COURT

VAN DUSEN, Circuit Judge.

These appeals challenge an October 3, 1974, district court order awarding counsel fees of $3,250.00 and costs of $377.07 to be paid to Jerome E. Bogutz, Esq. (Bogutz) by the trustee for Aberdeen Securities Co., Inc. (Aberdeen), which is in liquidation under the Securities Investor Protection Act of 1970 (SIPA), 15 U.S.C. § 78aaa *et seq.*[1] We reverse and remand for reconsideration by the district court of the claim for attorney's fees in light of this opinion.

This is the second appeal to come before this court from the above liquidation proceeding. See *Securities & Exch. Com'n v. Aberdeen Securities Co., Inc.,* 480 F.2d 1121 (3d Cir. 1973), where the Raizes claim was remanded to the district court "for appropriate findings in order to determine if there was, on the filing date, a legally sufficient claim . . . ."[2]

---

1. See *Securities & Exch. Comm'n v. Aberdeen Securities Co., Inc.,* 381 F.Supp. 614 (D.Del. 1974), which explains the background facts and district court reasoning in support of the October 3, 1974, order from which these appeals were taken. A December 2, 1974, order of Judge Aldisert on behalf of this court, which was amended on January 21, 1975, granted leave to appeal to Securities Investor Protection Corporation (SIPC) and the trustee of Aberdeen at ·No. 75–1075 and claimants Raizes, et al., and Bogutz at No. 75–1076. See 11 U.S.C. § 650 and F.R.A.P. 6. We have not overlooked the absence of any district court order determining the validity of the Boatland claims. See note 2 below. As to the appeal of the SIPC and the trustee for Aberdeen at No. 75–1074, we need not determine whether this is an appeal "in proceedings in bankruptcy" under 11 U.S.C. § 47, where no final, appealable order under 28 U.S.C. § 1291 is required, since these appellants have an effective appeal at No. 75–1075 as noted above.

2.· On remand, the trustee and SIPC reconsidered their positions and decided to forego further litigation. The trustee applied to the court on May 24, 1974, for the payment of the

The SIPA was passed by Congress to provide protection to investors if the broker-dealer with whom they are doing business should encounter financial difficulties.[3] The protection provided is similar to that provided bank depositors by the FDIC.[4]

The Act establishes the Securities Investor Protection Corporation (SIPC), which is a non-profit, membership corporation and is not an agency or establishment of the United States Government. Brokers, dealers, and persons who are members of a national securities exchange are the members of the corporation. In the event of the insolvency of a member, a court of competent jurisdiction would appoint a person specified by SIPC to act as trustee to liquidate the business of the debtor. 15 U.S.C. § 78eee(b)(3). SIPC would advance to the trustee such sums from a fund created by assessments on the members as would be necessary to provide prompt payment of claims of the debtor's customers, up to $50,000. for each customer, of which no more than $20,000. could represent a reimbursement of cash.

In its 1974 opinion (see note 1), the district court held that Attorney Bogutz was entitled to payment of the above-mentioned $3,627.07 in fees and costs, to be assessed against the estate. The reasoning of the district court, concurred in by Bogutz, raises a difficult question of statutory interpretation of the SIPA. Section 6(c)(1) of the Act, 15 U.S.C. § 78fff(c)(1) states:

> "Except as inconsistent with the provisions of this chapter and except that in no event shall a plan of reorganization be formulated, a liquidation proceeding shall be conducted in accord-

ance with, and as though it were being conducted under, the provisions of chapter X . . . of the Bankruptcy Act . . . ."

Attorney Bogutz asserts, and the district court held, that this section makes § 243 of Chapter X of the Bankruptcy Act, 11 U.S.C. § 643, applicable to SIPA proceedings. Section 243 provides:

> "The judge may allow reasonable compensation for services rendered and reimbursement for proper costs and expenses incurred by creditors and stockholders, and the attorneys for any of them, in connection with submission by them of suggestions for a plan . . . or in connection with the administration of the estate. In fixing any such allowances, the judge shall give consideration only to the services . . . *which were beneficial in the* administration of the estate . . ."

We note that § 6(c)(1) does not in express terms incorporate the provisions of Chapter X not inconsistent with the Act, but merely states that the SIPA "liquidation proceeding shall be *conducted* in accordance with, and as though it were being conducted under, the provisions of chapter X . . . ."[5] (emphasis supplied). As an aid in determining the significance of this distinction, we look to the legislative history. The most exhaustive discussion of the purposes of § 6(c)(1) to be found in the legislative history is the statement of Senator Bennett, at 116 Cong.Rec. 40905 (December 10, 1970):

> "The actual liquidation procedure will be conducted in accordance with, and as though it were being conducted under the provisions of chapter 10 of the

---

Raizes claim and of all other claims based on identical facts (the "Boatland" claims). See 381 F.Supp. at 616. The total Boatland claims allowed by the trustee, including the Raizes claim which was $500.00, amounted to $11,-656.00.

3. H.R.Rep.No.1613, 91st Cong., 2d Sess. (1970), *reprinted in* 3 U.S.Code Cong. & Admin.News, 91st Cong., 2d Sess. p. 5254, at p. 5255.

4. 116 Cong.Rec. 39347–48 (remarks of Congressman Staggers).

5. *Compare* 15 U.S.C. § 78fff(c)(1), *with* 11 U.S.C. § 502 of Chapter X, which includes this wording: "The provisions of chapters 1 to 7, inclusive, of this title shall, insofar as they are not inconsistent or in conflict with the provisions of this chapter, apply in proceedings under this chapter . . . ."

Bankruptcy Act, which allows business reorganizations, provided, however, that no plan of reorganization shall be filed. . . . These liquidation procedures have been carefully designed to allow flexibility, to meet the special needs in liquidation of broker/dealers to assure that the customers can receive prompt return of their securities and cash held by such broker/dealers.

"The basic purpose of these procedures is to give the trustee authority to return, as promptly as possible, specifically identifiable property to customers of the broker/dealers, to pay to customers moneys advanced by SIPC which has been left with such broker/dealers and to operate the business of the debtor in order to complete open contractual commitments of the broker/dealer. . . .

. . . . .

"The reorganization procedures of chapter 10 of the Bankruptcy Act were adopted to give the trustee the maximum flexibility in managing the affairs of the broker/dealer pending liquidation. This procedure is necessary to meet the special requirements of this legislation."

Thus, § 6(c) is intended to make the flexible Chapter X *procedures* available for SIPA liquidations. This does not mean that every provision of Chapter X, including provisions not relating to procedures for the operation of a bankrupt, has been incorporated into the SIPA. Only those provisions relating to the procedures for conducting the affairs of the estate during bankruptcy administration, except as inconsistent with the provision of SIPA, have been incorporated.

Section 243 of Chapter X does not relate to the conduct of the administration or liquidation procedures to be followed, but rather serves to redress the balance of power between insiders and outsiders during a corporate reorganization.[6] Under the provisions of SIPA the insiders are replaced by the neutral trustee appointed by the court at the request of SIPC, and thus the goal of equalizing the power of the large and small creditors has been met by means other than those embodied in § 243. We note further that Congress has provided for substantial supervision of SIPC's operations by the SEC, "charged with protection of the public interest . . . and for enforcement by that agency in court of the obligations imposed upon the corporation." *Securities Investor Protection Corp. v. Barbour,* 421 U.S. 412, 420, 95 S.Ct. 1733, 1738, 44 L.Ed.2d 263 (1975). We conclude that § 243 of Chapter X of the Bankruptcy Act has not been incorporated in the SIPA by § 6(c).[7]

Attorney Bogutz urges two other grounds as justifying an award of attorney's fees. One is based on his claim that by starting the litigation which presumably will lead to the satisfaction of the Boatland claims, he was effectuating congressional policy and, therefore, he was acting as a "private attorney general." He argues that to ensure such litigation is carried out and congressional policy served, courts must award attorney's fees to the successful litigant, to be paid by the losing party. In light of the Supreme Court's recent decision in *Alyeska Pipeline Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), however, this argument is untenable.[8] In that case, the

---

6. *See* 6A Collier ¶ 13.12, at 976–79 (1972).

7. *SIPC v. Charisma Securities Corp.,* 352 F.Supp. 302, 306 (S.D.N.Y.1972), holds that § 241 of Chapter X, 11 U.S.C. § 641, is applicable to a SIPA liquidation "[w]ith respect to the allowance of compensation to the trustee and his counsel . . . ." We find § 243 and § 241 wholly distinguishable. As the legislative history reveals, the basic purpose of the adoption of Chapter X procedures is to give

the trustee maximum flexibility. It is completely consistent with our interpretation of § 243 to conclude that Congress intended that the trustee's compensation, as well as his responsibilities, should be determined with reference to Chapter X.

8. We note that the district court did not have the benefit of *Alyeska, supra,* when it entered its October 3, 1974, order from which these appeals are taken.

Court held that the American rule that each party should bear its own costs controls, except in certain limited situations.[9] Since the SIPA neither contains nor incorporates any provision allowing the shifting of attorneys' fees, there appears to be no basis other than the "common fund" doctrine on which a court could order the payment of attorney's fees to Attorney Bogutz.

■ The final ground urged by Bogutz is based on the "common fund" doctrine of *Sprague v. Ticonic Bank,* 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1938).[10] He claims that the commencement of the Raizes litigation ultimately resulted in the creation of a fund which will be used to satisfy all the Boatland claimants, and he argues that a portion of this common fund should be awarded to him as attorney's fees so that all the claimants will share in the costs undertaken to produce the benefit. The district court suggested that it might have awarded Bogutz fees on the basis of *Sprague* had it not found § 243 of Chapter X applicable to actions involving the SIPA, using this language:

"The reasoning of the *Sprague* decision supports this Court's power to make an allowance to Bogutz for his services and expenses payable out of the distributive share of the Boatland claimants. Since, however, for reasons later to be stated, Bogutz is entitled to be recompensed from estate funds for the benefits he has contributed to it during its administration, and since the award payable from them will fairly compensate him for the efforts which he expended for the benefit of the Boatland claimants, the Court, as a matter of discretion, will not burden their distributive share of the assets with Bogutz fees and expenses." [11]

The court made clear that its conclusion to award attorney's fees was based on 11 U.S.C. § 643, rather than *Sprague.* See 381 F.Supp. at 618.

On remand, the district court should determine the applicability of the *Sprague* doctrine to this case and, if it determines that Bogutz is entitled to attorney's fees under that doctrine, should carefully consider in fixing the amount of such fees all the factors set forth in *Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary Corp.,* 487 F.2d 161 (3d Cir. 1973); [12] see *NBO Industries Treadway Companies, Inc., et al. v. Brunswick Corporation, et al.,* 523 F.2d 262 at 279 (3d Cir. filed Aug. 29, 1975).

The order of the district court will be reversed and the case remanded for further proceedings consistent with this opinion.

9. These situations may be summarized as (1) a contract or statute granting a right to attorney's fees; (2) the conferring of a common benefit by the recovery of a fund or property; (3) willful disobedience of a court order; or (4) a finding that the losing party has acted in bad faith, vexatiously, wantonly or for oppressive reasons. See *Alyeska, supra* at 257–59, 95 S.Ct. 1612.

10. *See* Dawson, Lawyers and Involuntary Clients: Attorney Fees from Funds, 87 Harv.L. Rev. 1597, 1632–36 (1974).

11. *SEC v. Aberdeen Securities Co.,* 381 F.Supp. 614, 616–17 (D.Del.1974).

12. The district court has the discretion to secure additional evidence bearing on these factors if it concludes such evidence would be helpful.